THE KANSAS-NATIONAL BANK OF WICHITA v. CHARLES M. HOVEY, *as Auditor of State, et al.*

1. MANDAMUS — *When Lies.* A peremptory writ of *mandamus* will only be allowed when the right of the plaintiff thereto is clear.
2. RECORD — *Evidence.* The record in this case examined, and *held*, that it does not clearly show that the plaintiff is entitled to a peremptory writ.

*Original Proceeding in Mandamus.*

THE opinion herein, filed February 6, 1892, contains a sufficient statement of the case.

*Chester I. Long*, for plaintiff.

*John N. Ives*, attorney general, and *Martin & Keeler*, for defendants.

Opinion by STRANG, C.: October 18, 1889, C. S. Jobes was appointed receiver of the Attica Sugar Company, of which the Kansas State Sugar Company was the lessee. February 9, 1891, said Jobes was removed as receiver of said company, and W. H. Brockway was appointed. When Jobes was appointed receiver of said company, the company was largely indebted for work and labor done and performed for said company, and for cane furnished the company by the farmers of the community. Jobes operated the sugar mill a part of the season of 1889, and all of the season of 1890. Under the law relating to the payment of bounty upon cane sugar manufactured in the state, said sugar company had earned $1,632.54, as bounty on the crop of 1890, for which an appropriation was made by the legislature of the state, March 4, 1891. (Laws of 1891, ch. 60.)

December 31, 1890, instead of making and filing with the auditor of state a voucher, for the bounty money due from the state to said sugar mill or its lessee, the said Jobes, as receiver, made an order payable to himself on the auditor of state for the amount of said bounty earned, which order the said Jobes, as receiver, delivered to the Attica State Bank, in alleged payment of a debt due from him as receiver of said company, to said bank. The bank of Attica, on the 3d day of January, 1891, transferred the said order to the plaintiff, the Kansas National Bank of Wichita. Though this assignment is alleged to have been made by the Attica State Bank to the plaintiff, it appears to have been made by C. S. Jobes, receiver. The order was then indorsed by the president of the Kansas National Bank of Wichita, Kansas, to the auditor of state for the account of the plaintiff, and was by him audited March 12, 1891.

The evidence shows that at the time said order was delivered to the Attica State Bank by the receiver he owed said bank a sum of money, consisting in part of an overdraft, and the balance of a loan represented by receiver's certificates, greater than the amount of said order. The question in the

case is, did C. S. Jobes, as receiver of the company he represented, possess authority to dispose of the bounty money due from the state to his company, at the time, in the manner and for the purpose for which he in fact disposed of the same? The receiver's authority was limited to such authority as was conferred upon him by the district court of Harper county. This authority must be gathered from the following orders of said court:

First, the order appointing Jobes receiver, which, among other things, contains the following, relating to his authority:

"To make temporary loans for the immediate payment of all unpaid labor, and for cane delivered, and for labor to be performed or cane to be delivered and used; and he is further ordered to sell the product of such factory in such market, at such times, and in such ways, as seems to him most advantageous and profitable; and that out of the proceeds of such sales, or from any other moneys on hand, he should reimburse and pay off such temporary loan, with the interest thereon."

Second, the order of December 30, 1889, which contains the following in relation to the authority of the receiver to make loans and liquidate and pay them off:

"It is therefore ordered, that the said C. S. Jobes, as receiver, in the action above entitled, make a temporary loan for the sum of $5,565.55, upon the best and most advantageous terms possible, and for such time as may be necessary, and that the said C. S. Jobes, as such receiver, issue his certificate for such amount, and to such person or persons as he may make such loan from; that the said certificate for said sum of $5,565.55 be and is hereby made a first lien upon the product of the sugar plant or factory of the said defendant, the Kansas State Sugar Company, and upon all moneys received from the sales of sugar and syrup manufactured by such plant or factory.

"And it is further ordered, that if from the sales of the product of such plant there shall be a deficiency, then such certificate shall be a first lien upon the receiver's charges upon the plant of the defendant, the Kansas State Sugar Company, located at Attica, Harper county, Kansas, and that the said sum of $5,565.55 be and the same is hereby passed and allowed as receiver's charges and expenses in said action.

"And it is further ordered, that the certificate of indebtedness issued by said receiver to the persons from whom such temporary loan shall be made, for said amount of money, shall show upon its face that it is the receiver's certificate for his charges and expenses in and about the operation of the said sugar plant of the defendant, the Kansas Sugar Company, and that it is a first lien upon all the products of such plant, and upon all money arising from the sale of said products; and that if there shall be a deficiency, after deducting the money received from the sales of the products from the amount realized on the certificate of $5,565.55, then that for such deficiency the said certificate shall be and is hereby made a first lien for said receiver's charges and expenses upon the sugar plant and factory of the said the Kansas State Sugar Company, located at Attica, Kansas."

And lastly, in the order of June 5, 1890, which is as follows:

"Now, therefore, it is considered, ordered, and adjudged, that the said C. S. Jobes, receiver herein, employ such labor and purchase such machinery and material of all character as may be necessary to make the necessary repairs and improvements in said sugar plant requisite for the successful operation of said sugar plant in the manufacture of sugar in the year 1890, and for the protection of said plant.

"And it is further ordered, that C. S. Jobes, as receiver, upon the most advantageous terms possible, procure a loan of money for such time as may be necessary and most advantageous, and at a rate of interest not exceeding 10 per cent., and not exceeding $10,000. And said receiver is hereby directed and authorized to issue his receiver's certificates in such amounts as may be most advantageous and convenient for the securing of such loan as he may make under this order; and said C. S. Jobes, as receiver, is hereby authorized and directed to issue his said certificate to each person, association or corporation from which he may obtain a loan for the purposes herein stated. And it is further considered, ordered, and decreed, that the said certificates so issued by the said C. S. Jobes, receiver herein, be and the same are hereby made a first lien, each of equal rank, upon all the products of the sugar plant that have or may come into the possession and hands of the said C. S. Jobes, as receiver, and upon all the net profits *arising* from the *operation* of said sugar plant, and upon all the machinery purchased with the proceeds of said loan or loans, in the improvement and

repair of the said sugar plant, and upon all of the property of every character now in the hands of said receiver, belonging to said defendant corporation, the Attica Sugar Company.

"And it is further ordered, that each certificate so issued shall show upon its face that it is the receiver's certificate for his charges and expenses in the repairing and operation of the said sugar plant, and that it is a first lien *pro rata*, if more than one certificate is issued, upon each and all of the property and proceeds last above mentioned."

The court has examined the record in this case, and has reached the conclusion that the whole controversy is a matter that should be settled by the district court of Harper county. *Mandamus* is an extraordinary remedy, and can be resorted to only when the party invoking it is clearly entitled to the order he seeks. In this case, there is nothing to show that C. S. Jobes, as receiver, has ever had any settlements of his accounts with the district court of Harper county. It is admitted that all the receiver's certificates issued by him are still outstanding. It is true he says he has paid them, except a balance of $750 due the Attica State Bank on certificate issued under the second order for the loan of $5,565.55, and a balance due the same bank of $400, on certificate issued under the third order, permitting the loan of $10,000, and also a balance of $400 due on a certificate for loan under some of the orders, to an investment company in Kansas City. It does not appear clearly under what order the certificate held in Kansas City was issued, but we think it must have been issued under the order of June 5, 1890, because that order provided for a loan of $10,000, and was the only order providing for a specific loan as large as $5,750, the amount of the Kansas City loan. If the certificate held in Kansas City was issued under the order of June 5, 1890, and we are right in our conclusions that the certificate held by the Attica State Bank, on which Jobes says there was $400 still due, was issued under the same order, then the balance on the latter certificate and the balance due on the certificate held in Kansas City must be paid *pro rata*. It follows, then, that the only debt to the Attica State Bank that could be paid in full by the bounty money is the balance of $750 back on cer-

tificate issued to that bank under the order of December, 1889, permitting the loan of $5,565.55. And as we do not think Jobes, as receiver, was, under any order unless possibly the first, authorized to incur any indebtedness by overdraft, and as it is not clear that the debt due the Attica State Bank on overdrafts of Jobes, as receiver, at the time he turned the order for the bounty money over to said bank, or any part of it, was incurred under the first order, we cannot say that said debt should be paid by the order for bounty money. The only sum of money due the Attica State Bank that could clearly be paid by said bounty money, at the time the bounty order was turned over to the bank, was the $750 due on the first certificate issued to that bank. But as the bounty order called for at least double the amount due on that certificate, it could not have been turned over to pay that balance alone. The right, therefore, of the plaintiff, who by its own contention received the bounty order from the Attica State Bank, to have this court order·the bounty order turned over to it is not clear.

It appears to us that this bounty money is a part of the product of the sugar mill the same as the money derived from the sale of sugar. It was money earned by the mill in the manufacture of sugar. As a part of the products of the mill, we think from all that appears in this case that it should be applied to the payment, first, of the $750 and interest thereon, being the balance on the certificate held by the Attica State Bank issued under the order of December —, 1889, and then to the payment *pro rata* of the balance due on the certificates held by the Attica State Bank and the Kansas City Investment Company issued under the order of June 5, 1890. Of course none of said bounty can be used to pay receiver's expenses and charges incurred by the present receiver, the defendant W. H. Brockway.

It is recommended that the peremptory writ be denied, and the controversy be relegated to the district court of Harper county, for settlement in accordance with the suggestions herein contained.

By the Court: It is so ordered.

All the Justices concurring.