## SETH S. SUMMERSON *vs.* FERDINAND SCHILLING, JR., ET AL., BOARD OF REGISTRY, ETC.

*Elections and Voters—Act of 1901, ch. 2, Repealing Law Providing for Registration of Voters as Illiterates—No Mandamus Issued Commanding Nugatory Act.*

The Act of 1896, ch. 202, provided that a voter who declared under oath to the Judges of Election that he was unable to read or write or was physically unable to mark his ballot and who had stated such inability at the time of registration and was so registered, should receive the assistance of the clerks in preparing his ballot. The Act of 1901, ch. 2, repealed this law and provided that voters not disabled by blindness or physical injury from marking their ballots, shall not be entitled to assistance. The petition in this case alleged that the petitioner applied for registration in a certain precinct on September 17th, 1901, and that the officers of registration refused to ask him if he was unable to read and write and to enter his negative answer on the registry, and the petition prayed for a *mandamus* to compel such registration, alleging that the Act of 1901, in so far as it denies aid to.illiterates in marking their ballot .is unconstitutional and that the Act of 1896, in so far as it provides for such aid, is still in force. The trial Court dismissed the petition on October 24th, and at that time the registers no longer had control of the books of registration and had then no authority under the law to make entries therein. *Held*,

1st. That since it would have been impossible at the time the order was passed for the defendants to have obeyed a writ of *mandamus* if one had been issued according to the prayer of the petition, the order dismissing the same was properly passed.

2nd. That the Board of Registry is not a perpetual board or continuously in office, their duties being at an end when they deliver the books of registration to the Supervisors of Election, and the writ asked for cannot be issued in this proceeding so as to bind their successors.

3rd. That the question of the constitutionality of the Act of 1901 is not properly before this Court and will therefore not be considered.

Appeal from an order of the Court of Common Pleas (PHELPS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Henry W. Williams* and *R. E. L. Marshall*, for the appellant.

1. It was the legal duty of the Board of Registry to enter upon the books of registry a record of the petitioner's inability to read, because the Act of 1901, in so far as it denies assistance to illiterate voters is unconstitutional and the Act of 1896, providing for such record remains in force. (Argument upon this point is set forth in the report of the next case.)

2. There can be no doubt but that a proceeding by way of *mandamus* would lie at the time it was instituted, to wit, during the sitting of the Board of Registry. All the circumstances necessary to support the proceeding were present. The petitioner had a clear legal right to the performance of a purely ministerial duty on the part of an official body, who, having the power to perform the duty expressly conferred upon them by law, were bound to the petitioner in respect thereto. The fact that the existence of the right depended upon the determination of a constitutional question, cannot effect the propriety of the proceeding since constitutional questions can be determined in *mandamus* proceedings. 13 *Ency. of Pleading and Practice*, 496; *State* v. *Balto. Co.*, 29 Md. 416.

But it is contended that the sittings of the Board of Registers having been concluded and the books of registry having been returned by them to the supervisors before the determination of the proceeding, the Board of Registry had no further control over or power to make corrections in said books, and that a writ of *mandamus* would, therefore, have been nugatory.

This objection is not applicable to the circumstances of this case. By the terms of the law the Boards of Registry are appointed annually, and hold office for one year. Section 9 provides that each person appointed as a Judge of Election shall be bound to serve as such officer for the term of one year. Section 14 provides that each Judge of Election in the city of Baltimore shall also be an officer of registration in the district or precinct for which he shall be appointed, and the judges when so appointed, when duly qualified, shall for their

respective districts or precincts, collectively constitute the Board of Registry thereof. The term of office, therefore, of the Board of Registry is one year, and before the expiration of that time, their successors in office are appointed by the supervisors, so that there is never a time when the office is vacant. That this is true follows inevitably from the provisions of section 7: "It shall not be necessary to appoint new or special Judges or Clerks of Election for any election not held on the first Tuesday after the first Monday in November, etc., but the judges and clerks appointed under this article for the preceding November election shall discharge the duties of said Judges and Clerks of Election, etc."

In contemplation of law, therefore, the office of Judge of Election, and, consequently, of Board of Registry, is never vacant, but exists perpetually, from year to year. It is true the law prescribes certain specified times, recurring from year to year, within which the functions of the Board of Registry are to be performed, but the board is not dissolved at the expiration of those times. Although it may have no duties to perform until the following year, it continues to exist by the terms of the law creating it. It is, therefore, a perpetual board, having certain public duties incumbent upon it, which are to be performed at certain specified times, which recur annually. In such case a writ of *mandamus* will lie, even though one of the annual periods within which the acts of the board are to be performed has expired at the time of the issuance of the writ, and, consequently, the writ cannot be presently enforced. It is mandatory and binding upon the board and its successors in office, in respect to the things enjoined, and cannot be said to be nugatory, but merely in abeyance. The body against which it is directed is in existence, the office is perpetual, the duties to be performed are fixed, and regularly recurring at stated intervals, the rights of the petitioner with respect to the matter in controversy are the same whether against this board or its successors, and, consequently while the writ, if issued now, would be incapable of immediate enforcement, it would be so, not because the persons to whom

it was directed are not it existence, or have no power to act, but because the time when, by law, they are required to act is not yet come. They have existence, a power to perform, and owe a duty, which is incumbent upon their successors equally with themselves, and the writ would be equally as effective if issued now, as if issued during the next session of the board. Nor does the fact that the term of office of the present incumbents will expire affect the question, for it is to the office it is directed, rather than to the officers, and in such case it operates upon the office and does not abate by reason of the termination of office of any incumbent. 13 *Ency. of Pleading and Practice,* 757; *Thompson* v. *United States,* 103 U. S. 480; *High's Extraordinary Legal Remedies,* sec. 36; *People* v. *Maher,* 64 Hun. 408.

*Bernard Carter* and *John Prentiss Poe,* for the appellees.

The object of the petition was to raise the question as to the constitutionality of the Act of 1901, ch. 2, sec. 16, amending sec. 16 of the pre-existing election law. His honor, JUDGE PHELPS, was of opinion, and so held, that he had no power to order the registration officers to put a question to the petitioner which the law did not authorize or require them to put. That inasmuch as, according to the provisions of the law, the work of the registration officers had ceased and the books of registration had passed from their control into the custody of the Supervisors of Election, any order passed by him as prayed in the petition would be nugatory. That if there was any omission in the law it was not for the Courts judicially to legislate, and especially should they be careful not to undertake to legislate in respect to political matters, and he accordingly did not feel himself called upon to pass on the constitutional question which the petition sought to raise.

For the appellees it will be argued: 1. That inasmuch as it appeared upon the face of the record that the time had passed for the work of registration when the Court was called on to issue the *mandamus* as prayed, the *mandamus* was properly refused, because, if granted, it would have ordered the

appellees to do something which it was beyond their power to do, and that the Court, according to the well-settled practice, would never by *mandamus* seek to compel parties to do a nugatory act.    *Code*, Art. 33, secs. 22 and 23; *Comm'rs.* v. *Comm'rs*, 20 Md. 449; *State* v. *Regester*, 59 Md. 289; *Wells* v. *Hyattsville*, 77 Md. 125; *Brown* v. *Bragunier*, 79 Md. 236.

2.. That inasmuch as the demurrer admitted several material matters of fact set up in the answer of McGraw and Krebs, the *mandamus* was properly refused, because upon the facts thus admitted, irrespective of other questions in the case, the petitioner was not entitled to the relief which he prayed.

These two points are quite sufficient, without more, to entitle the appellees to an affirmance of the order appealed from. Indeed, it seems plain upon an inspection of the record that it does not present for decision the question of the constitutionality of sec. 16 of the Act of 1901, ch. 2, and that, accordingly, this question not having been passed on by the Court below, and not being, as we have said, presented by the record, cannot properly be considered and passed upon by this Court.

3. But apart from all this, sec. 16 of the Act of 1901, ch. 2, is not unconstitutional.    By sec. 5 of Art. 1 of the Constitution it is declared that " the General Assembly shall provide by law for the uniform registration of the names of all the voters in this State who possess the qualifications prescribed in this article, which registration shall be conclusive evidence to the Judges of Election of the right of every person thus registered to vote at any election thereafter held in this State.''

By this section the amplest power is conferred by the General Assembly to pass any registration law which, in their judgment, they shall think fit, if it makes provision for the uniform registration described in the said section.    The details are absolutely left to them without restriction.    They are not bound to provide that persons, applying to be registered, shall be questioned as to their ability to read and write, and their failure to order the registration officers to put questions to applicants for registration cannot justly be claimed to invalidat the law.

Under the Act of 1896, ch. 202, sec. 16, a column in the books of registration was provided, under the caption of "Can read," with a provision for the recording of the word "No," if the applicant should state his inability to read, and for that reason would be unable to mark his ballot without assistance. But there is nothing in the Constitution that *requires* such a provision, and the Legislature of 1901 had the same power under the Constitution to omit that provision in section 16 as the Legislature of 1896 had to insert it. Neither the Act of 1888, ch. 155, nor the Act of 1882, ch. 22, sec. 15, contained any such provision, nor can any such provision be found in any of the preceding Acts prescribing the mode of registering voters. No one ever suggested that such a provision was necessary, and that without it the Acts were unconstitutional, nor is there any such provision in the Registration Act of 1890, ch. 573. And while it is true that the Australian Ballot Law, as first enacted in Maryland by the Act of 1890, ch. 538, provided that assistance might be rendered by the ballot clerks to voters who could not read, nobody suggested that the Registration Act of 1890, ch. 573, was unconstitutional because it did not provide for the questioning of applicants for registration as to their ability to read.

It seems plain, therefore, that upon the case made by this record the question of the alleged unconstitutionality of sec. 16 of the Act of 1901, ch. 2, is not presented, and that it cannot, therefore, properly be heard and determined in this case. And further, that, if it can be supposed that any public exigency calls for the decision by this Court of a constitutional question not presented by the record, no valid objection can be urged against the constitutionality of this section.

BOYD, J., delivered the opinion of the Court.

The appellant applied for a *mandamus* against the appellees, who constituted the Board of Registry of the 9th Precinct of the 10th Ward of Baltimore City, to compel them to question him as to his ability to read "and to enter and record his statement in respect thereof in the books of registry as re-

quired by law." The petitioner alleged that he presented himself for registration on the 17th day of September, 1901, and it became the duty of defendants to administer the oath to him and to question him as to his qualifications and to record in the books of registry his answers as to certain matters stated in the petition. He alleges they refused to question him and to enter in the registry books "whether said applicant is unable to read and for that reason will be unable to mark his ballot without assistance" and that "if said applicant states that he is unable to read and for that reason would be unable to mark his ballot without assistance, said registrars were required to enter the word 'no' upon their books of registry." The four registrars filed an answer in which they admitted that they did not question the petitioner's ability to read, but denied that he had made any request or demand upon them to do so. Subsequently Messrs. Schilling and Thomas, with leave of the Court, and with the consent of the other two registrars, filed an answer in lieu of the one previously filed, in which they admit that the petitioner did make the demand, but they refused by reason of the fact that under the law, as amended by the Act of 1901, ch. 2, they had no authority to do so, as that Act repealed the provision in the former law, which did authorize it. The petitioner then demurred to the two answers and on the 24th of October, 1901, the Court overruled the demurrer and dismissed the petition. From that order this appeal was taken.

Secs. 15 and 16 of Art. 33 of the Code of Public General Laws, as enacted by the Act of 1896, ch. 202, did make provisions for such an inquiry of an applicant for registration, but by the Act of 1901, ch. 2, these sections were amended and those provisions were omitted, and there was no authority given the registrars in any part of the election law to make such an entry, or any record of it in the registry books. Sec. 62 of Art. 33, as amended by the Act of 1901, expressly provides that voters who are not disabled by blindness or physical injury from marking their ballots, shall not be entitled to receive assistance in marking them. That section,

as enacted by the Act of 1896, ch. 202, provided that "any voter who declares under oath to the Judges of Election that he cannot read or write, or that by reason of physical disability he is unable to mark his ballot, and who shall have stated such inability at the time of registering, and is so entered in the registers shall receive the assistance of the clerk in preparing the same in the manner following," etc. Another case in which the appellant applied for a *mandamus* against the Judges and Clerks of Election was argued with the one now under consideration, which more particularly involves sec. 62, but the appellant contends that that section, as enacted in 1901, is unconstitutional, in so far as it refuses aid to illiterates, and that the Act of 1896 quoted above, is still in force. A great part of the argument on behalf of the appellant was directed to the alleged unconstitutionality of the Act of 1901, but we do not think that question is involved in this case, as presented by the record. The Court below did not pass upon it and unless the constitutionality of a statute, regularly passed by the Legislature, is properly before the Court it is, as a rule, not advisable for it to enter into such a discussion. We have sometimes done so, at the request of both sides to the controversy, but in this case while counsel for appellees did refer to the subject, it was only in the event that the Court should not agree with their contention that, to quote from their brief, "this question not having been passed on by the Court below and not being, as we have said, presented by the record, cannot properly be considered and passed upon by this Court." Acts of the Legislature are presumed to be constitutional and this Court ought not to be expected to call into question the constitutionality of a statute, when it is wholly immaterial to the decision of the case, as we think it is in the one now under consideration.

It is well settled that the Court will not, by *mandamus*, attempt to compel parties to do a nugatory act. *State v. Register et al.*, 59 Md. 289; *Wells et al. v. Hyattsville*, 77 Md. 142; *Brown v. Bragunier*, 79 Md. 236. If this order were reversed and a *mandamus* directed to be issued, it is manifest

that the defendants could not comply with it. The order dismissing the petition was passed on the 24th day of October, 1901. At that time the registrars no longer had control of the books, and had no authority to make entries thereon. The election was held on the fifth· day of November, and the last meeting of the Board of Registrars before the election, provided by law, was "the Tuesday three weeks preceding such regular election," and then "for the sole purpose of revising their registry, and no new names shall be added." Section 21 of Art. 33. That was on the 15th of October, 1901. Section 22 of Art. 33, provides for comparing and correcting the two registers; so as to make them agree, and directs that "during the next day the Board of Registry shall return the two registers to Board of Supervisors of Elections," etc. The Board of Registry therefore did not have possession of the books and had no authority to make entries therein when the order of October 24th was passed. Even in cases of appeal from that board, the Supervisors of Election are the parties to make entries ordered by the Court. Such being the law and the facts of this case, it would have been impossible for the defendants to have complied with a *mandamus*, if one had been ordered, and therefore it would have been nugatory and a useless proceeding.

It is contended, however, on the part of the appellant, that the Board· of Registry is a perpetual board and the successors of·the defendants would have been bound by the writ of *mandamus*. A sufficient answer to that would·perhaps be that the petition only prays that a writ of *mandamus* may be issued directed to the four persons named "constituting the Board of Registry * * * * .commanding them to question your petitioner," etc. There is no prayer for a writ to issue so as to bind their successors. But independent of that there is no such continuous office in the Board of Registry as would make the authorities cited by the appellant applicable to this case. It is true that Judges of Election are appointed for a year and that in Baltimore each Judge of Election is an officer of registration. But their duties, as a Board of Registry, are at an

end when they turn the books over to the Supervisors of Election, excepting in the years in which there is a municipal election in Baltimore, and there is none in 1902. In case of a special election there is no revision of the registry. Section 34 of Art. 33. In the city of Baltimore there is an annual registration and it would have been a remarkable writ if the Court had on October 24th, 1901, issued one which would have compelled the registrars, to be appointed in 1902, to question the petitioner as to his ability to read. He may not then be entitled to register in that precinct and yet according to the contention for the appellant a writ of *mandamus* could have been issued, its service suspended until new registrars are appointed for the precinct, although the appellant in the meantime may have changed his residence, or in some way lost his right to register there, or possibly during the year may have learned to read. It is clear that such a writ of *mandamus* could not properly have been issued.

So without considering other reasons, we think that the order dismissing the petition was properly passed and it will be affirmed.

> *Order affirmed, appellant to pay the costs.*

(Decided March 5th, 1902.)