JAMES McEVOY, DANIEL C. AMMIDON AND AL-
FRED S. NILES, COMPRISING THE BOARD OF POLICE
COMMISSIONERS FOR THE CITY OF BALTIMORE,

*vs.*

MAYOR AND CITY COUNCIL OF BALTIMORE AND
JAMES H. PRESTON ET AL., COMPRISING THE
BOARD OF ESTIMATES OF BALTIMORE CITY.

*Board of Police Commissioners: yearly estimates not subject
to review by Board of Estimates; duty of city; right of
Police Board to issue certificates. Statutes: con-
struction. Mandamus: discretionary; not
to be granted when nugatory.*

The repeal of statutes by implication is not favored.   It is
only when they are repugnant and plainly inconsistent that a
repeal by implication is presumed.                         p. 120

Section 31 and section 36 of the Charter of Baltimore City
(see Chapter 123 of the Acts of 1898), requiring the estimates
therein referred to to be submitted to the revision of the Board
of Estimates, do not apply to the estimates to be made each year
by the Board of Police Commissioners of the amount necessary
to enable them to discharge the duties imposed upon them for
the ensuing year.                                          p. 124

The estimates of the amount necessary to enable the Police
Commissioners to discharge the duties imposed upon them for
the ensuing year, when made by that board, and, under the
Charter (section 747), certified to the Mayor and City Council,
should, through the Board of Estimates, be included within
the estimates for annual appropriations, and inserted in the
Ordinance of Estimates without revision or reduction, as a sum
"required by law" to be appropriated for such purpose, to be

thereafter passed by the Mayor and City Council without reduction.                                                              p. 124

To compel the passage of such an ordinance, a writ of mandamus is not necessary, as by section 15 of Chapter 7 of the Acts of 1860, as amended by section 747 of the City Charter, and the authority thereby given and the provisions made, if the requisitions of the Board of Police Commissioners, upon the Mayor and City Council, or the disbursing officer of the corporation, are not honored to the amount of their estimate so certified, the Board of Police Commissioners are authorized and required to issue certificates of indebtedness, in the name of the Mayor and City Council of Baltimore, for the amounts so required.                                               p. 125

The granting, or the withholding, of the writ of mandamus rests in the discretion of the Court; it is never granted where it is unnecessary, where it would work injustice, "or where it would be unavailing or nugatory," or where it would introduce great confusion or disorder into a municipal administration.

pp. 124-125

*Decided April 23rd, 1915.*

Appeal from the Court of Common Pleas of Baltimore City.  (DOBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Robert F. Stanton,* for the appellant.

*S. S. Field, the City Solicitor,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

In this case the Police Board of Baltimore City filed its petition on the 7th day of December, 1914, asking that a writ of mandamus issue directed to the Board of Estimates

and the Mayor and City Council of Baltimore, commanding the former "to incorporate in the proposed ordinance of estimates the amount estimated by the Board of Police Commissioners for the City of Baltimore as necessary to maintain and conduct the police department of said city for the year 1915; and further commanding and enabling the Mayor and City Council of Baltimore to assess and levy the amount estimated as necessary to maintain and conduct the police department of said city for said year."

The petition alleged, in substance, that the petitioners, as required by law, in 1914, made an estimate of the sum of money that in their judgment was necessary to enable them as such Board of Police Commissioners "to discharge the duties imposed upon them and to properly maintain and conduct the police department of the City of Baltimore during the year 1915," and certified and forwarded said estimate to "the Mayor and City Council, acting through its Board of Estimates, to be incorporated in the draft of an ordinance to be submitted to the City Council." The amount so estimated by the Police Board was $1,415,733.99. This amount was reduced by the Board of Estimates to the sum of $1,394,303.99 and said sum was inserted in the draft of the ordinance which was thereafter submitted to and passed by the Mayor and City Council. This amount, as alleged by the petitioners, was insufficient for the "maintenance and conduct of the police department of Baltimore" for such ensuing year. As required by the provisions of the City Charter the draft of the ordinance of estimates, when completed, was published in the daily newspapers of the city before it was sent to the City Council, and it was then learned for the first time by the petitioners that the amount so estimated and certified by them to the Mayor and City Council had been reduced. Upon inquiry by the petitioners as to the reduction so made, the Mayor and City Council, acting through its Board of Estimates, informed them that said action on its part was not the result of error or oversight, but was deliberate and final. Whereupon, as alleged by the peti-

tioners, they at once, "before said proposed ordinance of estimates had passed beyond its custody and control, or had been delivered by the Board of Estimates to the City Council for its consideration, notified the Board of Estimates, by letter, that they could not abandon the duty imposed upon them by law and would not submit to any interference by the Mayor and City Council, in the discharge of their duty, nor could they acquiesce in the action of the Board of Estimates and the Mayor and City Council." But the Mayor and City Council, through the City Solicitor, refused to assess and levy said amount so estimated and certified to by the petitioners, and it was thereafter that the petition in this case was filed.

In their answer to the petition, the Mayor and City Council and those comprising the Board of Estimates allege that section 747 of the City Charter, under which the right is claimed by the petitioners to estimate the amount required for the maintenance and conduct of the police force of the city and upon which a levy is thereafter to be made, without revision or interference on the part of either the Mayor and City Council or the Board of Estimates, was so modified by section 36 of the charter as to confer upon the Board of Estimates the right to revise and to reduce the estimate made by the petitioners, if in their judgment it should be reduced.

The answer also alleges that at the time of the receipt of the petitioners' letter of December 4th, referred to in their petition, "the Board of Estimates had no power to make any change in said ordinance of estimates, as the same had been finally certified by them and published, as required by law." The answer denies "that they had refused to allow the petitioners sufficient funds to properly maintain and conduct the police department of Baltimore City in an efficient and effective manner; on the contrary they say that they have allowed in said ordinance of estimates and have provided for the levy of a fund amply sufficient to enable the petitioners to discharge all the duties imposed upon them by law in an efficient and effective manner."

It is averred in the answer that the Court should not grant the prayer in the petition and should not issue any mandamus for the following reasons: 1st. "Because the Board of Estimates had authority and discretion under the law to make the reduction which they did make in the amount asked for by the Police Commissioners"; and 2nd. "Because neither the Board of Estimates nor the City Council have any power to levy any other or additional sum for the police department or for any other department for the year 1915, the ordinance of estimates for the year 1915 having already been passed, and the petition in the case not having been filed until the ordinance of estimates had been advertised and a copy of the petition was not served upon any member of the Board of Estimates until after the adjournment of the Council called to consider said ordinance and after the introduction and first reading of said ordinance."

A demurrer to the answer was filed and overruled. It is from the order overruling the demurrer and dismissing the petition that this appeal is taken.

It will be necessary for us to review at some length the legislation creating the Board of Police Commissioners and imposing upon them the duties they are to perform and conferring upon them the powers they are to exercise in the performance of such duties.

Section 3 of Chapter 7 of the Acts of 1860 provided for the establishment, within the City of Baltimore, of a Board of Police to be called the Board of Police Commissioners of the City of Baltimore. The board at such time was to consist of the number of commissioners therein named, who were to have the qualifications therein mentioned, and were to hold office for the time and to receive the compensation therein stated. The number of commissioners, the manner of their selection, the term of their office and their compensation have been changed from time to time by succeeding statutes.

Section 5 of said Act, which defines the duties of the Board of Police Commissioners, appears, without any mate-

rial change, in the local code of 1860, section 808 of Article
4, in the present City Charter passed by the General Assem-
bly at the January Session, 1898, Chapter 123, section 747,
and in the local code of 1906 of Baltimore City, section 747.

Section 15 of said Acts of 1860 provides that:

"It shall be the duty of said board, with all conven-
ient speed after qualifying as aforesaid, and annually
thenceforward, to estimate what sum of money will be
necessary for each current fiscal year, to enable them
to discharge the duties hereby imposed on them, and
they shall forthwith certify the same to the Mayor
and City Council of Baltimore, who are hereby re-
quired, without delay, specifically to assess and levy
such amount as shall be sufficient to raise the same,
clear of all expenses and discounts, upon all the assess-
able property in the City of Baltimore, and to cause
the same to be collected as all other city taxes; and
it is hereby made the duty of the Collector of the
City of Baltimore, and he is *required to collect said
tax, and no bill of city taxes other than for interest
on the city funded debt (except bills for city taxes
payable before the year eighteen hundred and sixty)
shall be demandable or receivable from any person by
the Mayor and City Council of Baltimore, unless the
same shall contain the proper charge for such tax,* to
be denominated the police tax; and the said board of
police upon and after qualifying as aforesaid, are
hereby authorized to make requisitions from time to
time upon the mayor, register, comptroller of the City
of Baltimore, or other proper disbursing officer or offi-
cers of the corporation, for such sums of money as
they may deem necessary for executing their duties
under this Article; provided, however, the same shall
not exceed in any year the amount so as aforesaid cer-
tified, or which may thereafter be certified for that
year, to the Mayor and City Council aforesaid, and in
case the said disbursing officer or officers shall not
forthwith pay over the amount of each requisition as
made, it shall be the duty of said board, and they are

hereby authorized and required, to issue certificates of indebtedness in the name of the Mayor and City Council of Baltimore, in such amounts as they deem advisable, for the amounts of such requisitions respectively, bearing interest at six per cent. per annum, payable at not more than twelve months after date, and signed by a majority of the board, and to raise the money on said certificates by pledging or disposing of the same, which certificates shall be receivable at par in payment of city taxes, and be as binding on said corporation, and as recoverable against it, as if the Mayor and City Council of Baltimore had themselves issued said certificates."

The above quoted section was repealed and re-enacted with amendments by Chapter 367 of the Acts of 1867, the amendment going only to the extent of eliminating from said section the part thereof which appears in italics, and this section amended as aforesaid is now found in the present City Charter (Acts of 1898, Chapter 123, section 747), and in the local code of 1906 of Baltimore City, section 747.

Section 36 of the charter, which the appellees contend modifies the aforesaid section 747 of the local code, and which, as they claim, confers upon them the right to revise and reduce the estimate made by the Board of Police Commissioners, provides that the Board of Estimates shall annually, between October 1st and November 1st, make out three lists, the first of which is known as the "Departmental Estimates" and contains the "amounts estimated to be required to pay the expenses of conducting the public business for the next ensuing fiscal year, including the expenditures by the City Council for the salaries of its members, officers and expenses"; the second, which is known as the "Estimates for New Improvements," contains "all amounts to be appropriated by the City Council for new improvements to be constructed by any department of the city during the next ensuing fiscal year"; and the third, known as the "Estimates for Annual Appropriations," contains "all amounts which

by previous laws, ordinances or contracts are required to be annually appropriated to charities, educational, benevolent or reformatory institutions by the city, *as well as all other sums, if any, which may be required by laws or ordinances to be appropriated for other purposes, not embraced in the preceding lists."*

The section then provides that in order to enable said board to make such list, the presidents of the two branches of the City Council, the heads of departments, heads of sub-departments, municipal officers not embraced in a department, and special commissions or boards, shall, at least thirty days before the said list is hereby required to be made, send to the said board, in writing, estimates of the amounts needed for the conduct, respectively, of the City Council, departments, sub-departments, municipal officers not embraced in a department, commissions or boards for the next ensuing fiscal year. * * *   The said estimates shall specify, in detail, the objects thereof, and the items required for the expenses of the City Council, and the respective departments, sub-departments, municipal officers not embraced in a department, and special commissions or boards, as aforesaid, including a statement of each of the salaries of the members of the City Council and its officers and clerks, and the salaries of the deputies, assistants, clerks, employees and subordinates in each department, sub-department, municipal office or special commission or board. * * *   After said three lists have been prepared, the Board of Estimates shall cause to be prepared a draft of an ordinance, to be submitted to the City Council, providing appropriations sufficient to meet the amounts called for by said three lists; and the said board shall cause a copy of said proposed ordinance * * * to be forthwith published in two daily newspapers in Baltimore City, for two successive days, and shall, immediately after said publication, transmit a copy of the said proposed ordinance to the presidents of each branch of the City Council. * * * The two branches of the City Council, by a majority vote of all the

members elected to each branch, may reduce the said amounts
fixed by the said board in said proposed ordinance, *except
such items thereof as are now or may hereafter be fixed by
law,* and except such items as may be inserted by said board
to pay State taxes, and to pay the interest and principal of
the municipal debt.    The City Council shall not have the
power to increase the amounts fixed by the board, nor insert
any new items in the proposed ordinance.    When said pro-
posed ordinance, embracing said estimates, shall have been
duly passed by both branches of the City Council and
approved by the Mayor, the said several sums shall be and
become appropriated, after the beginning of the next ensu-
ing fiscal year, for the several purposes therein named, to
be used by the City Council, departments, sub-departments,
municipal officers not embraced in a department, and special
commissions or boards therein named, and for no other pur-
poses or uses whatever.    "The City Council shall not have
the power, by any other or subsequent ordinance or resolution,
to enlarge any item contained in said ordinance after the
same is duly passed.    Nor shall the City Council, by any
subsequent ordinance or otherwise, appropriate any sums of
money to be used for the next ensuing fiscal year, for any
of the purposes embraced in said ordinance of estimates."

It is contended by the appellees that the Board of Police
Commissioners is included within the provisions of this sec-
tion as one of the "Boards" therein mentioned, and that sec-
tion 747 of the local code is irreconcilably in conflict with such
provisions of the charter.    And it is urged by the appellees
that although these sections are both found in Chapter 123
of the Acts of 1898, yet section 36 appeared therein as a new
law consonant with the provisions of the charter creating the
budget system for Baltimore City, while section 747 was but
the incorporation in the Act of 1898, or the new City Charter,
of the old law as it had stood since 1860 with practically no
change therein, and is therefore to be considered and treated
as the older of the two provisions, and as they are irreconcil-

able, the older law, as it is termed by them, is repealed by the newer law.

It is, however, unnecessary, we think, to decide the question as to which of these provisions would prevail if they were adjudged to be irreconcilable, for, in our opinion, the apparent conflict between them may be reconciled.

It is well settled that a repeal by implication is not favored by the Courts, and if by a reasonable construction the two provisions may be made to stand together they will be harmonized. It is only when they are repugnant and plainly inconsistent one with the other that there is a repeal by implication. *Webb* v. *Ridgely,* 38 Md. 364; *Yunger* v. *State,* 78 Md. 575; *Mining Co.* v. *C. & P. R. R. Co.,* 81 Md. 35; *Prince George's Co.* v. *Laurel,* 51 Md. 457; *School Commissioners* v. *Henkel,* 117 Md. 97; *Mayor & City Council of Baltimore* v. *Davis,* 120 Md. 405.

In deciding the question as to the alleged conflict in the aforesaid sections of the charter, we are to determine whether the Board of Police Commissioners is included within the provisions of section 36 in respect to the requirement that they are to submit to the Board of Estimates, for its revision, their estimate of the amount necessary to enable them to discharge the duties imposed upon them for the ensuing year.

Section 31 of the City Charter provides that the executive power of the Mayor and City Council of Baltimore shall be vested in the "Mayor, the departments, sub-departments, municipal officers not embraced in the departments herein provided for, and such special commissions or boards as may *hereafter* be provided for by laws or ordinances not inconsistent with this article." The section then states with greater particularity what is included within such general statement by saying:

"The said executive departments shall be as follows: (1) Department of Finance, with the following subdepartments: Comptroller, City Register, Board of Estimates, Commissioners of Finance, City Collector, Collector of Water Rents and Licenses; (2) Depart-

ment of Law, composed of City Solicitor; (3) Department of Public Safety, with the following sub-departments: Board of Fire Commissioners, Commissioner of Health, Inspector of Buildings, Commissioner of Street Cleaning; (4) Department of Public Improvements, with the following sub-departments: City Engineer, Water Board, Harbor Board, Inspector of Buildings; (5) Department of Parks and Squares, composed of Board of Park Commissioners; (6) Department of Education, composed of Board of School Commissioners; (7) Department of Charities and Corrections, with the following sub-departments: Supervisors of City Charities, Visitors to the Jail; (8) Department of Review and Assessment, with the following sub-departments: Appeal Tax Court, Commissioners for Opening Streets; (9) Division Embracing Municipal Officers, not included in any Department: City Librarian, Art Commission, Superintendent of Lamps and Lighting, Surveyor, Constables, Superintendent of Public Buildings, Public Printer."

It will be observed that the Police Board, although it was in existence at such time and had been for a long time prior thereto, is not mentioned or referred to therein.

The legislative power of the city government is vested in the City Council.

Those included within the aforesaid provisions of section 36 of the City Charter are "the presidents of the two branches of the City Council, the heads of departments, heads of sub-departments, municipal officers not embraced in a department, and special commissions or boards." The Board of Police Commissioners is not specifically mentioned and is not to be included within the provisions of said section unless it be shown that it is embraced within the general term "special commissions or boards."

In section 31 special commissions or boards are referred to as forming part of the executive power of the Mayor and City Council, but these are confined to special commissions

and boards "as may *hereafter be* provided for by law or ordinance." And as the Police Board was in existence at such time it is not a board within the provision "hereafter to be provided for." There are in said section a number of commissions and boards specifically mentioned and referred to as forming a part of the executive power of the city government, but nowhere in the section is the Board of Police mentioned or referred to, a board as important as any of those named, if not more so, and which was in existence at the time of its passage and for a long time prior thereto.

It would seem that had it been the intention of the legislators to include this important board within the aforesaid provisions of sections 31 and 36 of the Charter, they would have specially mentioned it, but in section 31 this board is not mentioned as forming a part of the executive power of the city, nor is it named in section 36 with those who are required to submit to the Board of Estimates, for its revision, the estimates of the anticipated receipts and expenditures of their respective departments for the ensuing year.

That it was not the intention of the Legislature to include the Board of Police Commissioners within the aforesaid provisions of sections 31 and 36 of the present City Charter, or subject them to the control or interference of the Mayor and City Council, is further shown by section 1 of said Chapter 7 of the Acts of 1860, now section 6 of the City Charter, and section 19 of the said Act of 1860, as amended by Chapter 367 of the Acts of 1867, now section 769 of the Local Code of 1906. The first of these sections provides that "No ordinance heretofore passed or that shall hereafter be passed by the Mayor and City Council of Baltimore shall hereafter conflict or interfere with the powers or the exercise of the powers of the Board of Police of the City of Baltimore heretofore created, nor shall the said city, or any officer or agent of the city, or the Mayor thereof, in any manner *impede, obstruct, hinder or interfere* with the said Board of Police or any officer, agent or servant thereunder;" and in the latter

section it is provided that "Nothing in this sub-division of this article shall be so construed as to * * * give the said Mayor and City Council of Baltimore any control over said board, or any officer of police, policeman or detective appointed thereby."

If the Board of Police Commissioners are to be held subject to the provisions of section 36 of the Charter, whereby the amount to be expended in the management and conduct of the police department is to be determined by the Board of Estimates and not by the Board of Police Commissioners, it is difficult for us to conceive how this could be done without subjecting them, in the management and conduct of the force, to the control of the Board of Estimates, to the extent that such alleged power of the Board of Estimates is exercised. If the Board of Police Commissioners are to be controlled and restricted in their expenditures by the Board of Estimates, they are necessarily interfered with in the exercise of their power in the managment and conduct of the force to the extent of such restriction.    If the expenditures are to be reduced by the will of the Board of Estimates, the management and efficiency of the force will largely depend upon the action of the Board of Estimates, for if the expenditures be reduced to an amount insufficient for the proper management and conduct of the department, its efficiency must necessarily be impaired.

Under the statute now in force (Chapter 15 of the Acts of 1900) the Board of Police Commissioners consists of three persons appointed by the Governor, each for the term of two years, and since the passage of the Act of 1860, by which the successors to those named therein as the Board of Police were appointed by the joint ballot of the General Assembly, the said board has been regarded by this Court as a State board.    *Mayor and City Council* v. *Howard,* 20 Md. 335; *Altvater* v. *Mayor and City Council,* 31 Md. 462; *Sinclair* v. *Mayor and City Council,* 59 Md. 597; *Upshur* v. *Baltimore City,* 94 Md. 752.

It was, we think, to preserve the independent status of the Board that section 1, Chapter 7 of the Acts of 1860, and section 19 of said Act as amended by the Acts of 1867, as well as section 15 of said Act of 1860, were incorporated in the Acts of 1898, known as the new City Charter. The provision of section 36 requiring the estimates therein mentioned to be submitted to the Board of Estimates for its revision does not we think apply to the estimate to be made each year by the Board of Police Commissioners of the amount necessary to enable them to discharge the duties imposed upon them for the ensuing year, and therefore in our opinion there is no serious conflict between the aforesaid provisions of the City Charter.

The estimate of the amount necessary to enable the Board of Police Commissioners to discharge the duties imposed upon them for the ensuing year, when made by the Board of Police Commissioners and under the Charter (section 747), certified to the Mayor and City Council, should, through the Board of Estimates, be included within the "Estimates for Annual Appropriations" and inserted in the ordinance of estimates without revision or reduction as a sum "required by law" to be appropriated for such purpose, to be thereafter passed by the Mayor and City Council without reduction.

But notwithstanding the conclusion that we have reached, should the writ of mandamus issue in this case?

As was said by this Court in *Kinlein* v. *Mayor and City Council of Baltimore,* 118 Md. 581: "The granting or withholding of the writ rests largely in the discretion of the Court * * * and will not be granted where it is altogether unnecessary, or would work injustice, or would be unavailing or nugatory, or would introduce into a municipal administration great confusion or disorder." *Webb* v. *Zimmerman,* 23 Md. 45; *Brooke* v. *Widdicombe,* 39 Md. 386; *Hardcastle* v. *Md. & Del. R. R. Co.,* 32 Md. 32; 19 *Amer. & Eng. Ency. of Law* 751. And in determining whether the writ will be allowed or not it will not be allowed unless the Court is satis-

fied it is necessary to secure the ends of justice or to subserve some just and useful purpose. *George's Creek Coal & Iron Co. v. County Commissioners,* 59 Md. 255.

The granting of the writ in this case would, we think, be altogether unnecessary to secure the ends of justice or to subserve any just or useful purpose, inasmuch as the statute to which we have referred (section 15, Chapter 7 of the Acts of 1860, as amended by the Acts of 1867, now section 747 of the City Charter) affords an adequate remedy in that the "Board of Police Commissioners" are authorized to make requisitions from time to time upon the Comptroller of the City of Baltimore, or other proper disbursing officer of the corporation, for such sums of money as they may from time to time deem necessary for the purpose of carrying out the objects and intentions of this sub-division of this article; provided, the same shall not exceed in any one year the amount so as aforesaid certified, or which may thereafter be certified for that year, to the Mayor and City Council of Baltimore as aforesaid, and in case the said disbursing officer shall not forthwith pay over the amount of each requisition as made, it shall be the duty of the board, and they are authorized and required to issue certificates of indebtedness, in the name of the Mayor and City Council of Baltimore, in such sum, as they may deem advisable for the amount of such requisitions, respectively, bearing interest at six per cent., per annum, payable at not more than twelve months after date, and signed by a majority of said Board, and to raise the money on said certificates by pledging or disposing of the same; which certificates shall be receivable at par in payment of City taxes, and be as binding on said corporation and as recoverable against it as if the Mayor and City Council of Baltimore had themselves issued the same."

It follows from what we have said that the Court, in our opinion, committed no error in overruling the demurrer to the answer and dismissing the petition asking for the issuance of the writ of mandamus, and we will therefore affirm the order.

*Order affirmed, with costs to the appellee.*