No. 25,452.

The Kaw Valley Drainage District of Wyandotte County, *Appellant,* v. The Kansas City Southern Railway Company and the Board of County Commissioners of the County of Wyandotte, *Appellees.*

### SYLLABUS BY THE COURT.

1. Mandamus—*Writ Given or Withheld in the Exercise of Judicial Discretion as Facts and Circumstances May Warrant.* The award of a writ of mandamus is not always an absolute right, but is to be given or withheld in the exercise of a sound judicial discretion as the facts and circumstances may warrant.

2. Same. It is a remedy to be resorted to where the party invoking it is clearly entitled to it and where there is no other adequate remedy.

3. Same. It should not be granted to enforce a right which is in substantial dispute or in doubtful cases.

4. Same. The writ is designed to promote justice, and hence should not be employed to compel action that is unreasonable and which would cast an unjust burden upon parties.

5. Same. Official action involving the expenditure of money will not be coerced by mandamus in the absence of a showing that funds therefor are presently available.

6. Same—*An Order of Drainage District Requiring the Defendants to Remove Wreckage of Two Bridges Buried for Twenty Years in the Channel of the River Was Unreasonable and Not Enforceable by Mandamus.* An

order of a drainage district to the effect that a county and a railroad company shall remove wreckage from the channel of the river which is alleged to be parts of bridges that were severally owned by the parties, and which were washed away twenty years before, during the flood of 1903, the wreckage in question being buried in sand and silt to the depth of from two to fifteen feet, and where it could not be ascertained whether the wreckage was part of the bridge formerly owned by the county or that owned by the railway company, or previously belonged to other parties, until· an excavation was made and it was brought to the surface, and there being no coöperation between the county and the railway company in the building of the bridges, and no responsibility of one party for the destruction of the bridge of the other, is held to be unreasonable and if enforced would cast an unjust burden on the parties.

Appeal from Wyandotte district court, division No. ·3; WILLIAM H. Mc-CAMISH, judge. Opinion filed January 10, 1925. Affirmed.

*Thomas A. Pollock,* of Kansas City, for the appellant.

*O. L. Miller,* of Kansas City, *Cyrus Crane,* and *Hugh .E. Martin,* both of Kansas City, Mo., for appellee The Kansas City Southern Railway Company; *J. H. Brady,* and *T. F. Railsback,* both of Kansas City, for appellee The· Board of County Commissioners.

The opinion of the court was delivered by

JOHNSTON, C. J.:   The Kaw Valley drainage district invoked the extraordinary remedy of mandamus to compel the commissioners of Wyandotte county and the Kansas City Southern Railway Company to remove from the channel of the Kaw river the wreckage of two bridges cast into the river in the flood of 1903, more than twenty years ago, part of which it is alleged is still in the river.   It appears from the record that the county bridge was erected in 1879 and that the railroad bridge was built in 1892. The county, it appears, had nothing to do with the building or maintenance of the railroad bridge, and no responsibility for its .destruction when it was swept away in the flood of 1903.   Neither did the railroad company have any part in the construction or maintenance of the county bridge, and of course is not responsible for the unprecedented flood, and it insists it is not responsible for any wreckage of the county bridge that may be in the channel of the river.   While the defendants are sued jointly, it does not appear that either was concerned with the bridge of the other, or .that one can be affected by a judgment that might be rendered against the other.   There was no connection between the bridges nor any apparent reason for joining the parties, unless it be the

Drainage District v. Wyandotte County *et al.*

proximity of the bridges, which it is said were only about 150 feet apart, and the possibility that the wreckage may be near together or intermingled in the channel of the river.

Defendants moved to quash the alternative writ issued in the first instance, contending that there was an improper joinder of parties and causes of action; that the averments of the plaintiff were indefinite and uncertain as to the existence or location of the wreckage in the river; that the facts pleaded formed no basis upon which a peremptory writ of mandamus could be issued; that if there is wreckage of the bridges in the river it was placed therein by *vis major* or act of God, and was not wrongfully placed or maintained there by the defendants; that if it be necessary to remove the debris from the river it should be done by plaintiff, which has been provided, at public expense, with the machinery for clearing the river; that the remedy sought is unreasonable and not within the scope of the remedy of mandamus, and even if the remedy were appropriate it should be denied because of the laches of the plaintiff. The court sustained the motion to quash, remarking that if there were obstructions in the river as alleged, they were not placed or maintained there by the defendants; that the loser of property washed away by the unprecedented flood was not required to search the bed of the river for the same; that as twenty years had elapsed since the flood, and as the wreckage was not definitely located and probably was not susceptible of identification, and as the county was without dredging facilities or means for clearing the channel and the plaintiff had been provided these facilities at great expense, the issuance of a peremptory writ against the defendants was not justified.

On the application of the plaintiff it was given ten days to amend its pleading, and within that time one was filed, which included a new and supplemental resolution adopted by the board of the drainage district after the ruling on the original pleading, which recited, among other things, that the bridges washed out were too short and too low; that they were built without authority of the state or the United States; that there were seventeen bridges in the vicinity at the time of the flood and that sixteen of them were washed away because they were too low and too short; that they were not wrecked by the act of God, that the county had since rebuilt its bridge under authority of the plaintiff, which had imposed as a condition for rebuilding that the abutments of the old

bridge should be removed; that the county had at one time offered to pay a part of the cost of the removal of the wreckage; and that the railway company has not abandoned its right of way and had taken and used portions of the old bridge that were left standing; and that the delay in bringing this action to compel the removal of the wreckage was caused by the promises and the conduct of the defendants. There was in the new pleading an allegation that wreckage of the bridges was so buried in the sand and silt and so intermingled that the identity of the parts of each bridge could not be ascertained or distinguished, and further, that it was impractical to remove the wreckage of one without removing that of the other.

In their answers the defendants repeated the defenses originally set forth and added that plaintiff had elected as its remedy the recovery of damages sustained in respect to the obstructions in the river; that in May, 1923, it served a notice on the defendants stating that it was engaged in clearing the channel of the river and removing wreckage of the bridges, and that it would hold the defendants liable for all expenses incurred in the removal of such wreckage, and if payment was not made a suit for the recovery of the same would be brought. Another averment was that when the bridges were built by the defendants no harbor limits had been established, and that as constructed they complied with the existing law. It was further averred that the plaintiff itself is equipped for removing debris from the river while the defendants are not, that after the river is cleared the liability of defendants, if any exists, may be determined in an ordinary action at law. The railway company alleged that to avoid the expense of litigation it had offered to pay a small sum as the purchase of peace, and that this was the only reason for the proposal made. Some of the allegations of the pleadings are not deemed to be material to the decision that is to be made, and hence are not recounted at length. The testimony of a single witness was heard at the trial, and at the conclusion of the testimony the court again denied the writ.

It is clear that the remedy sought was properly refused. The writ of mandamus does not lie to enforce a right which is in substantial dispute. It is a remedy which may only be resorted to where the party invoking it is clearly entitled to it and where there is no other adequate remedy. It should never be granted in doubtful cases. (*Swartz v. Large,* 47 Kan. 304, 27 Pac. 993; *National*

*Bank v. Hovey*, 48 Kan. 20, 28 Pac. 1090.) It is designed to promote justice and hence should not be employed to compel official action that is unreasonable or unjust. (*City of Potwin Place v. Topeka Rly. Co.*, 51 Kan. 609, 33 Pac. 309; 26 Cyc. 155.) The demand of the plaintiff is unreasonable and would cast an unjust burden on the defendants. Passing the procedural question of misjoinder, the defendants are asked to excavate sand and silt over a considerable area in order to reach wreckage said to be a part of the bridges carried away by the flood. The wreckage in the river, from whatever source it may have come, is buried to a depth of from two to fifteen feet in the sand and silt in the bed of the river. To reach the wreckage an excavation costing a large sum of money must be made before it can be ascertained whether the wreckage in the river is a part of the bridges swept away twenty years ago, or is made up of trees, timbers, implements and other solids formerly owned by others that may have been carried by the flood from the upper reaches of the river. The county ought not to be compelled to incur the expense of this excavation in order to dig up the property of the railway company or that which formerly belonged to others; neither is it reasonable that other owners should be compelled to uncover and bring up the property of the county. It is specifically alleged and the proof shows that there is no means of ascertaining what the wreckage is without bringing it to the surface. If there is wreckage in the river which was formerly a part of either bridge it was not put there through the volition or action of the defendants, but was thrown into the river by what is recognized by all as an act of God. The fact that the wreckage of one bridge may be intermingled with that of the other or with other debris that has floated down the river is no reason why one defendant should be compelled to uncover and lift out of the river the property of the other. This must be so even if it were held that either can be required to remove parts of its own bridge that may be found in the river. It is said that the order of the board is an exercise of its legislative power, and that it must be obeyed, but the statute only authorizes the board to make orders that are reasonable, and the reasonableness of its orders is open to judicial review. (*Drainage District v. Railway Co.*, 99 Kan. 188, 161 Pac. 937.) Where parties have placed obstructions in the river since the flood and the creation of the district and are maintaining them there contrary to a reasonable order of the board, a proceeding to

remove them may be maintained. (*Drainage District v. Railway Co.*, 87 Kan. 272, 123 Pac. 991; *Drainage District v. Railway Co.*, 99 Kan. 188, 161 Pac. 937.) The bridges of defendants, as we have seen, were destroyed in 1903 before the board had an existence, and in no sense can it be said that the wreckage of these is being maintained in the channel of the river by the defendants.

Another reason for refusing the writ is that the county is without equipment or funds that may be used in clearing the channel of the river of obstructions. The purchase of dredging machinery and the organization of a force of experts to remove wreckage and put the channel in proper condition would necessarily require a large expenditure of money which is not presently available to the county for that purpose. Inability to comply with a compulsory mandate is generally regarded as a good ground for the denial of the writ. An official act involving the expenditure of money will not be coerced by mandamus in the absence of a showing that the money therefor is at once available. (18 R. C. L. 139, 241.) It would be a useless formality to issue a writ that could not be enforced. It has been held that courts will not exercise this extraordinary jurisdiction where its authority cannot be vindicated by the enforcement of process. It has likewise been held that it will not issue where it would cause disorder in the fiscal affairs of a municipality or be attended with manifest hardships and difficulties. (18 R. C. L. 138.)

Defendants argue, with plausibility, that the district itself has been given control of the river, the clearing of the channel of obstructions and the raising of money to be expended in the improvement of the river. It further appears that the board has expended a large sum of money in providing facilities for dredging and clearing the channel, and even if the owners of property carried into the river by the flood are liable for the expense of removal, the work should nevertheless be done by the board and not by parties unskilled in such work and without proper equipment for carrying it on. Such parties might injure the dikes, interfere with navigation and do that which would cause more damage than benefit. We rest the decision, however, on the ground that the demand made by the plaintiff is unreasonable and would operate unjustly, and because of this view it is unnecessary to determine whether there is a liability of defendants, recoverable in another form of action, for the expense of moving any wreckage from their bridges

Drainage District v. Wyandotte County, *et al.*

that may be lodged in the river, nor some other questions so much discussed in the briefs. The award of the writ is not an absolute right, but is to be given or withheld in the exercise of sound judicial discretion as the circumstances may warrant. In view of the long delay of twenty years in the bringing of an action, thus tending to show acquiescence of the plaintiff in present conditions and the circumstances already mentioned, the trial court in the exercise of a proper discretion was justified in giving judgment for defendants.

The judgment is affirmed.