JOSEPH A. SCHRIVER ET AL. *v.* MAYOR & CITY
COUNCIL OF CUMBERLAND
[No. 25, October Term, 1935.]

*Decided November 21st, 1935.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Charles Z. Heskett* and *W. Carl Richards,* with whom were *Edward J. Ryan* and *Thomas Lohr Richards* on the brief, for the appellants.

*Lewis M. Wilson,* with whom was *Walter C. Capper* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

This appeal is from a denial of the writ of mandamus to compel the City of Cumberland to extend its water supply system to the house of the appellants, in a mountainside area recently annexed to the city, designated as "Annexation District No. 1." The site is at the outer edge of the district, at a height above that to which the existing system will force water, and the city officials answer that their present resources would not cover the expense of adding the necessary pump tank and pipes to carry water higher, or of maintaining the supply with this equipment if installed. The house is one of three in the new district, and stands about 400 feet within the outer and upper line of it.

The Act of Assembly under which the annexation was made, Acts 1929, ch. 552, provided that the Mayor and City Council "shall furnish to the property owners within such subdivisions the usual public utilities and may enter upon said private streets, lanes, alleys and highways for the purpose of maintaining electric lights, water pipes," etc., and "shall extend its systems of light, water, sewer service and other public conveniences throughout and over the streets, lanes, alleys and highways * * * as the same shall be required for the convenience of the

inhabitants of said territory." On a popular referendum, provided for by the act, it was approved in the following year.

Another act of the same legislative session, Acts 1929, chapter 548, secs. 1-6 (Code Pub. Loc. Laws 1930, art. 1A, secs. 170 to 176), authorized the city to issue "water improvement" bonds to the amount of $200,000, the proceeds to be used "for the purpose of improving, repairing, extending and other necessary purposes heretofore and hereafter affecting the water supply of the City of Cumberland, and for no other purpose or purposes." Section 3. And the same act provided that charges for the water supplied to residents of Cumberland and the vicinity should equal the expenses of operating the water system, and pay principal and interest on all bonds issued for water improvements, and that if in any one year the receipts from the water department should be less than the expenses, the city should levy on the assessable property an amount necessary to make payments on the bonds of the new $200,000 issue, or borrow for the purpose not more than $30,000 in one year, increasing the water rent in the succeeding year to pay off the deficit. This act, too, was approved on a popular referendum.

It is to be observed that use of the proceeds of the new bond issue was not restricted to newly annexed districts. On the contrary, the money was by the terms of the statutes available for use on any part of the water supply system of the city. The petitioners consider, however, that extension of the supply into their district was assured by promises made to obtain votes for approval of the annexation, and in understandings, by the municipal officials and the assembly at the time of passage of the acts, that the extension should be made, and made forthwith, by means of the money from sale of the bonds. But such promises or understandings could not serve as sources of legal rights and obligations, added to the actual provisions of the statutes. In ascertaining the rights and obligations of the parties, the courts are confined to the statutes passed to create them, and promises or

understandings not made law by inclusion in the statutes have no existence that the courts can recognize. *Smith v. State,* 66 Md. 215, 217, 7 A. 49; *Riggin v. Wyatt,* 139 Md. 476, 478, 115 A. 755.

The case was heard below by the court sitting without a jury, and therefore on appeal this court is required to consider and weigh the whole record, and determine the questions of fact as well as those of law. *Woods v. Simpson,* 146 Md. 547, 549, 126 A. Testimony was taken on the contentions advanced, and the facts found are these.

Out of the proceeds of the new issue of bonds and other resources, the city has expended $311,929.95, and of this amount $248,089.80 was expended in newly annexed districts. Of the remaining funds expended, part was used in street expenses and improvements to the system in the older, central portion of the city. The tearing up and repaving of one of the main streets afforded the city an opportunity to make a necessary enlargement of pipes without destroying the surface a second time; and there were other uses of the money on the older existing system.

The system has lost money in recent years, with a resulting deficit of $51,000. Uncollected water rents amount to $123,760.16. Loans outstanding for the water department amount to $100,000. If the uncollected rents could be received at once and applied to the debt, the city would have from $18,000 to $20,000 in hand. Testimony showed ground for hope that funds of the national government might be brought to the aid of the city, but there appears to be no such assurance of that aid as would permit a court to treat it as available.

The petitioners' house is supplied with other facilities, including electricity, natural gas, and a telephone, and there is a street light nearby, paid for by the city. But they are as yet supplied with water only scantily and with difficulty, from private sources. Owners of other lots in the newly annexed district consider it imprac-

ticable to build houses, and go on with the development of the district, until the water supply is extended. All, including the petitioner, are nevertheless paying taxes; their properties are subject to the liens of the water system bonds.

The existing system will force water only to the level of 1,100 feet, some distance below the petitioners' house. Two estimates are given of the cost of installing a new pump, tank, and pipes to supply the house by a properly constructed system, one of about $20,000 at present prices, and the other $35,000. The net yearly cost of maintenance, until increased building and consumption of water might increase the income from water rents, would be $1,200. There is a sum of $6,186.94 in the city treasury from taxes collected in this annexed district, but by an express provision of the Acts of 1929, chapter 552, expenditures from that fund are restricted to sewers, lights, collection of garbage, and streets in the particular district.

There are three other districts beyond the reach of the city's present supply system, and hence not supplied.

The petitioners find a peremptory duty on the city to make the extension imposed by the provisions of the statute that the city "shall furnish to the property owners within such subdivisions the usual public utilities," and "shall extend its systems of light, water," etc., into the district, "as the same shall be required for the convenience of the inhabitants of said territory." And they see the failure of the municipal officials to make the extension as an obstinate repudiation of the duty. But the testimony seems to show the officials rather as trying to perform their duties as they see them, and perplexed, as other municipal officials are at this time, by scarcity of money. There is no money in hand for the expenditure demanded in this case. The money from unpaid rents clearly cannot be counted as money available at any definite time. The petitioners contend for a resort to the borrowing power given by section 174 of

chapter 548 of the Acts of 1929 (Code Pub. Loc. Laws, art. 1 A, sec. 173), that is, the power to borrow not more than $30,000 in a year to make up a deficit between expenses and rents in a previous year. But it is only for a deficit between water rents received, on the one hand, and operating charges and obligations on bonds, on the other, that borrowing is authorized in section 173. The section begins with a requirement that charges for water shall be fixed to equal "the expenses heretofore and hereafter necessary for the operating of the water system," and to carry or redeem outstanding bonds, and the provision for borrowing follows as an alternative remedy for failure of the calculated rents to realize enough to pay these operating and other specified expenses. There is no power in the act, or elsewhere, so far as appears, to borrow for extensions more than the $200,000 already raised from the bond issue. The trial court found no authority to borrow more, and none has been cited.

Enough to finance the extension now sought would have been left from the $200,000 from the bond issue if some projects in the older part of the city had been deferred; and the petitioners complain of prior expenditure on those projects as wrongful. We do not see that it was contrary to the authority of the statutes, but if it were, there would be in those prior uses no mitigation of the fact that no money is available now. The writ of mandamus could now compel only an action which the city, by reason of lack of funds, could not take. And the courts do not issue writs to compel what cannot be done.

The writ of mandamus, to repeat a pronouncement made in many previous decisions, is not one issued for a petitioner as of right in him. While it is issued without hesitation where it is just to do so and free from serious disadvantages, the court exercises a discretion after viewing the effects of the issue. *Kinlein v. Baltimore,* 118 Md. 576, 581, 85 A. 679; *McEvoy v. Baltimore,* 126 Md. 111, 124, 94 A. 543. It is not issued to command what is impracticable, or "if it be manifest that it

must be vain and fruitless, and can have no beneficial effect." *State v. Register et al., Fire Commissioners,* 59 Md. 283, 289; *Board of Commissioners of Public Schools v. County Commissioners,* 20 Md. 449, 461; *Summerson v. Schilling,* 94 Md. 582, 589, 51 A. 610; *Graham v. Gaither,* 140 Md. 330, 344, 117 A. 858; *United States (Redfield) v. Windom,* 137 U. S. 636, 644, 11 S. Ct. 197, 34 L. Ed. 811; *Kaw Valley Drainage District v. Wyandotte County,* 117 Kan. 369, 374, 232 P. 266; review of decisions in note 14 *L. R. A.* 779.

There might, perhaps, be a question whether the requirement that the city shall extend its supply as stated in the statute means that the extension shall be made forthwith, without choice of time or financial conditions; but it is a question that may be passed. For, because of the lack of available funds, apart from all other considerations, the extension cannot be commanded. The order denying the writ must be affirmed.

*Order affirmed, with costs.*