IRVING B. JACKSON, Mayor *v.* JOHN H. COSBY, ET AL.

[No. 24, October Term, 1941.]

*Decided November 6th, 1941.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*V. Calvin Trice,* for the appellant.

*W. Laird Henry, Jr.,* with whom was *James A. McAllister,* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Dorchester County dismissing a bill of complaint filed by Irving B. Jackson, Mayor of Cambridge, seeking an injunction to restrain John H. Cosby from acting as City Engineer and W. Laird Henry, Jr., from acting as Attorney for the City of Cambridge, and to restrain Carroll L. Dail, Treasurer and Collector, from paying them any salary.

For many years the municipal powers of the City of Cambridge were vested in five Commissioners, who were authorized to select one of their own number to serve as Mayor. Code P. L. L., art. 10, secs. 47, 57. In 1935 the Legislature amended the charter by providing that the Mayor should be elected by the voters of the city. The Act also conferred upon the Mayor the power to veto any ordinance passed by the Commissioners. Acts of 1935, ch. 256, sec. 57A. The Mayor also has express authority to preside over the meetings of the board, to see that the ordinances are faithfully executed, and to perform such other duties as may be required of him by charter and ordinance. Code P. L. L,. art. 10, sec. 58; Acts of 1939, ch. 12.

While the Commissioners have never been expressly authorized by the Legislature to appoint a City Engineer or an Attorney, they have often made such appointments. On July 17th, 1940, the Commissioners, after making appointments to several offices, voted over the Mayor's protest to appoint Cosby as City Engineer and Henry as Attorney to the Board. Mayor Jackson complained that no such office as City Engineer or Attorney to the Board has ever been created by charter or ordinance, and that the action of the

Commissioners infringed upon his prerogatives as Mayor and upon the rights and privileges of the citizens of Cambridge. The defendants filed demurrer and answer and after a hearing thereon the Chancellor sustained the demurrer and dismissed the bill.

It is a fundamental principle that courts of equity should not assume jurisdiction in controversies where the questions involved are purely political. While the political rights of a citizen are as sacred as his rights to personal liberty and property, yet the jurisdiction of equity, in the absence of constitutional or statutory authority, is generally limited to the protection of the rights of property, and any effort of a court of equity to consider the political rights of individuals is an invasion of the domain of the courts of common law or of the other departments of the government. For that reason the Supreme Court of the United States in 1888 specifically held that courts of equity have no jurisdiction to determine the validity of the appointment or election of public officers. In re Sawyer, 124 U. S. 200, 8 S. Ct. 482, 488, 31 L. Ed. 402, 407. Since there is no constitutional or statutory provision conferring equity jurisdiction for that purpose in Maryland, it is now recognized as a general rule that a court of equity in this State is not the proper forum in which to try title to either appointive or elective office, and anyone who disputes the right of a person to public office must pursue the remedy allowed by common law or statute. Price v. Collins, 122 Md. 109, 89 A. 383; 28 Am. Jur., Injunctions, sec. 72. This doctrine is applicable to public employees as well as to public officers.

Of course, this general principle assumes that the acts in question are purely political and do not involve irreparable injury to property rights. But a court of equity will not assume power to grant injunctive relief where the question of property right is merely incidental to a political question. The primary question in the present case is the right of Cosby and Henry to

serve in the positions to which they were appointed; the payment of their salaries is an incidental question. This Court has already held that where there are two questions involved in a suit, one the title of an appointee to office, the other an alleged unlawful payment of salary attached to the office, the question of the proper jurisdiction to be invoked will depend upon the primary purpose of the suit. *Carey v. Jackson,* 165 Md. 472, 476, 169 A. 922.

It is observed that the Legislature has expressly empowered the Commissioners of Cambridge to perform or to provide for the performance of any of their necessary functions mentioned in the charter. Code P. L. L., art. 10, sec. 63. Furthermore, it is generally recognized that a municipal corporation has implied power to employ engineers when the technical skill and knowledge of such persons are deemed necessary for the proper administration of the affairs of the municipality, and to employ counsel to render services in matters of proper corporate interest. *Kirkpatrick v. Monroe,* 157 La. 645, 102 So. 822; *City of Topeka v. Ritchie,* 105 Kan. 398, 184, P. 728; 43 *C. J., Municipal Corporations,* secs. 1620, 1622.

The ancient common-law doctrine that the Mayor is an integral part of a municipal corporation, and hence all corporate acts done in his absence are invalid, has never been applied to the office of Mayor in the United States. The powers of a Mayor in this country are dependent almost entirely upon the proper construction of the charter and the ordinances passed in accordance with it. It has thus been held by the Supreme Court of Alabama that where a city charter confers upon the Mayor and Aldermen the right to elect such officers as they may see fit, the veto power of the Mayor is not applicable to the election of officers. *Huey v. Jones,* 140 Ala. 479, 37 So. 193; 2 *McQuillin, Municipal Corporations,* secs. 429, 618. It was insisted by Mayor Jackson that since the Legislature had conferred upon him

the power to veto ordinances, he also had the right by implication to veto appointments. But if such a construction were placed upon the statutory provision, it is obvious that the official business of the Commissioners might often be hampered or delayed. It is unreasonable to believe that the Legislature intended to produce such a situation. *Erwin v. Jersey City,* 60 N. J. L. 141, 37 A. 732, 733, 64 Am. St. Rep. 584. The court holds that the charter conferred upon the Commissioners the power to appoint an Engineer and an Attorney, and the Mayor has no right to veto such appointments.

Another contention of Mayor Jackson was that Cosby and Henry failed to comply with the provision of the charter, Code P. L. L., art. 10, sec. 55, which requires all officers, whether elective or appointive, except the Mayor, to take the oath of office prescribed by the Maryland Constitution, art. 1, sec. 6. But it is conceded that the Legislature has never created any office of City Engineer or Attorney for the City of Cambridge; that neither Cosby nor Henry received any commission; that neither is required to file any official bond; and that they exercise no powers except such as are derived from the Commissioners. It is evident that they cannot be regarded as public officers, but merely employees. A person who receives no commission, takes no oath of office, has no term of office fixed by statute or ordinance, and exercises no portion of the sovereign power of the government, but merely performs the duties required of him by the officials employing him, is not a public officer within the meaning of the Constitution. *City of Baltimore v. Lyman,* 92 Md. 591, 611, 48 A. 145, 52 L. R. A. 406, 84 Am. St. Rep. 524; 2 *McQuillin, Municipal Corporations,* secs. 436, 437.

As the action of the chancellor in sustaining the demurrer to the bill of complaint was correct, the decree dismissing the proceedings will be affirmed.

*Decree affirmed, with costs.*