## LEE I. HECHT *v.* HOWARD E. CROOK ET AL.

[No. 76, October Term, 1944.]

*Decided January 10, 1945.*

The cause was argued before DELAPLAINE, COLLINS, GRASON, MELVIN, and HENDERSON, JJ.

*Hector J. Ciotti* and *Isaac Hecht* for the appellant.

*Helen Elizabeth Brown* and *Hamilton O'Dunne, Assistant City Solicitors of Baltimore City*, with whom were *Simon E. Sobeloff, City Solicitor*, and *Avrum K. Rifman, Assistant City Solicitor*, on the brief, for the appellees.

*Philip B. Perlman, Charles C. G. Evans, R. E. Lee Marshall, F. Murray Benson, Charles C. Wallace, Paul F. Due, Wilson K. Barnes*, and *Wirt A. Duvall, Jr., amicus curiae.*

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of the Superior Court of Baltimore City dismissing a petition for a writ of mandamus filed by the appellant, Lee I. Hecht, to require the Board of Trustees of the Employees' Retirement System of Baltimore City to grant his application for retirement benefits under the provisions of Baltimore City Ordinance

No. 553 (1925-1926) and amendments thereto, and to require the Board of Estimates of the Mayor and City Council of Baltimore to provide for and pay to the Employees' Retirement System such an amount of money as may be necessary to comply with the award. The particular benefit sought by the applicant was under an amendment to Section 6 of the original pension ordinance adopted in 1939 (Ordinance 942), reading as follows:

"(11) (a) Notwithstanding anything to the contrary in this Ordinance, should a member be removed from a regular permanent position of the City without fault upon his part, after the completion of twenty years of creditable service and the attainment of age fifty, or after the completion of twenty-five years of creditable service regardless of age, such member may elect, in lieu of the withdrawal of his accumulated contributions, to have such contributions paid to him in an annuity of equivalent actuarial value, in which event he shall also be paid a pension equal to the ordinary disability pension that would have been payable at such time had he been retired on an ordinary disability retirement, and the Board of Estimates of the Mayor and City Council of Baltimore shall provide for and pay to the Retirement System for the purpose of paying such pension the additional amount so required. The payment of all such pensions and the continued payment of such pensions shall be contingent on the payment annually by the Mayor and City Council of Baltimore of the additional amount so required to meet the current disbursement of such pensions. Should such a beneficiary be restored to active service, his retirement allowance shall cease, he shall again become a member of the Retirement System, and he shall contribute thereafter at the same rate he paid prior to his retirement. Any prior service certificate on the basis of which his service was computed at the time of his retirement shall be restored to full force and effect, and in addition upon his subsequent retirement he shall be credited with all his services as a member, provided his pension upon such subsequent retirement shall not ex-

ceed the pension he was receiving prior to restoration plus such pension as may have accrued on account of his membership service after restoration."

Under the original pension ordinance (No. 553), benefits are provided in the case of retirement from service due to age (optional after sixty, mandatory after seventy), physical or mental disability, or accidental disability. Benefits are also provided in case of death or accidental death. In the event of separation from service except by death or retirement, a member is entitled to a return of his accumulated contributions, with interest compounded at 4 per cent. There are also certain optional allowances in the form of annuities or payments to the estate or to the beneficiaries or dependents of the member.

The provisions for the payment of accidental death benefits were held to be invalid by this court in *Duncan v. Graham,* 155 Md. 507, 142 A. 593, as beyond the scope of the enabling Act, Section 20A of the City Charter (1938 Edition), but by Chapter 113 of the Acts of 1929, Section 20B was enacted to authorize a system of allowances and payments to be made to the beneficiaries and dependents of the members of the Retirement System after the death of such members "(whether accidental or otherwise and/or whether occurring in the actual performance of duty, or otherwise)"; Section 20C of said Act made this authorization retroactive, and Section 20D confirmed and ratified all awards theretofore made.

The essential facts in the case are stipulated. Mr. Hecht was appointed by the Mayor as a Judge of the Appeal Tax Court on September 24, 1923, to fill an unexpired term expiring March 1, 1926. He held the office by successive appointments of three years each until March 1, 1943, and continued to serve as a holdover until October 18, 1943, when his successor qualified. The appointments were made under the authority of Section 25 of the City Charter (1938 Edition), which prescribes a three-year term, and an oath of office. The Appeal Tax Court was created in 1874 as a subdivision of the municipal corporation. The appellant was not a classified employee of

the city, and not subject to the laws, rules or regulations of the City Service Commission. He became a member of the Employees' Retirement System on March 27, 1926, by voluntary application and acceptance by the Board of Trustees under the authority of Section 3 (3) of Ordinance No. 553. That section authorized the Board to make optional with any class of elected officials, or officials appointed for fixed terms, their individual entrance into membership. At the time the appellant surrendered his office he had an unbroken period of creditable service totaling twenty years and eighteen days, and was fifty-five years of age.

In due course he applied for the benefits of Section 6 (11) (a) (Ordinance 942) and was given a hearing before the Board of Trustees. His application was denied, upon the advice of the City Solicitor, on the ground that the applicant had not been removed from a regular permanent position of the city, within the meaning of the ordinance. It was conceded that his surrender of the office was due to the expiration of his term and the appointment of a successor, without fault upon his part.

The Board of Trustees of the Retirement System is charged with the general administration of the system under Section 5 (1) of the ordinance. Under subsection (7) it is authorized, subject to the limitations of the Article, to establish rules and regulations for the transaction of its business. "Employee" is defined in Section 1 (2) as "any regular and permanent officer, agent, servant or employee of the City," and to include persons paid by the city, however appointed, except those appointed by the governor, and certain others. The Board of Trustees, "in all cases of doubt * * * shall decide who is an employee within the meaning of this Article." No appeal is provided from the decisions of the Board. The City Solicitor is designated as the legal adviser to the Board.

A preliminary question is presented as to whether mandamus is a proper remedy to compel the Board of Trustees to allow the appellant's claim. The point was strong-

ly pressed by the city in its brief and argument. The court below was of the opinion that the Board acted in the exercise of its discretion and judgment in determining that the applicant was ineligible for the benefits claimed, and that its decision is not reviewable. But in the opinion of this Court, we think the question is open to review.

The decision of the Board was not based upon a finding of disputed fact; it was based solely upon the legal interpretation of the language of the ordinance. There is no express language in the ordinance providing that the decisions of the Board upon legal questions should be final, or that its rules should have the force of law. In this respect the case is distinguishable from *Metcalf v. Cook,* 168 Md. 475, 178 A. 219. It is also distinguishable from cases where the action sought to be enforced involves the exercise of judgment under the police power, rather than the interpretation of a statute, such as *Brack v. Wells,* 184 Md. 87, 40 A. 2d 319; *Durkee v. Murphy,* 181 Md. 259, 29 A. 2d 253; *Graham v. Gaither,* 140 Md. 330, 117 A. 858; *Walter v. Montgomery Co.,* 180 Md. 498, 25 A. 2d 682; and *Engle v. City Com'rs of Cambridge,* 180 Md. 82, 22 A. 2d 922. The action in these cases might be described as purely executive, whereas the action in the case at bar is *quasi-judicial.*

This court pointed out in the recent case of *Dal Maso v. County Com'rs,* 182 Md. 200, 34 A. 2d 464, that the latter term does not imply any power in the Legislature to clothe administrative boards with judicial authority. Nevertheless, the fact remains that innumerable controversies are decided today, by boards of legislative creation, of a character that traditionally fell within the scope of judicial inquiry.

One of the earliest instances in the Maryland reports where the writ of mandamus was granted is found in *Runkel v. Winemiller,* 1799, 4 Har. & McH. 276, 1 Am. Dec. 411, where a minister was wrongfully dispossessed of his office and the emoluments of the living. It was pointed out that the General Court possessed the same

authority as that possessed by the Court of King's Bench to issue the prerogative writ, "to prevent disorder, from a failure of justice, where the law has established no specific remedy, and where in justice and good government there ought to be one," quoting Lord Mansfield in *Rex v. Barker*, 3 Burr, 1265 (1762). In *Harwood v. Marshall*, 9 Md. 83, 97, it was pointed out that a similar jurisdiction was conferred upon the County Courts, and in turn upon the Circuit Courts. While the procedure was modified by statute, the essential nature of the writ remains unchanged. *Weber v. Zimmerman*, 23 Md. 45; Code (1939 Ed.), Art. 60. In *Eichelberger v. Sifford*, 1867, 27 Md. 320, the writ issued to compel the payment of the state bounty to the attorney of a volunteer who enlisted in the Army of the United States, but immediately deserted. Such payment was held to be a ministerial act, and not one involving discretion; but the question was essentially one of statutory construction.

In another line of cases, dealing with the disbursement of funds appropriated by the Legislature, it has been held that disbursement is discretionary and not ministerial. *Red Star Line v. Baughman*, 153 Md. 607, 139, A. 291; *Foote & Co. v. Harrington*, 129 Md. 123, 98 A. 289; *Wailes v. Smith*, 76 Md. 469, 25 A. 922; *Green v. Purnell*, 12 Md. 329. These cases can be explained on the ground that the appropriation did not amount to a waiver of immunity from suit, but was intended to be contingent upon findings of law or of fact by the disbursing official. In other instances, such as *Board of Welfare v. Listman*, 175 Md. 473, 2 A. 2d 674, relief was denied because the Court lacked the power to compel the application of reverted funds. The writ never issues where it is unnecessary or its effect would be nugatory.

It does not follow that the decision of a Board is not open to review, merely because it turns on the determination of a legal question. The argument that mandamus is a writ of enforcement only, to require obedience to a clear legal duty, was answered by this Court, speaking through Chief Judge Bond, in *Cahill v. Mayor, etc., Bal-*

*timore,* 173 Md. 450, 455, 196 A. 305, 307: "The limitation of purpose on the writ does not exclude consideration of all or any disputed questions of law. If it did there would seldom be any usefulness in the writ, for official opposition to a citizen's claim would seldom be the result of official obstinacy in the face of an unquestioned requirement of the law. Disputes similar to that in the present case have been adjudicated on petitions for the writ in this state. *Goldman v. Crowther,* 147 Md. 282, 128 A. 50, 38 A. L. R. 1455; *Baltimore v. State,* 15 Md. 376, 74 Am. Dec. 572; *Bostock v. Sams,* 95 Md. 400, 52 A. 665; *Frederick County v. Fout,* 110 Md. 165, 72 A. 765; *Upshur v. Baltimore,* 94 Md. 743, 51 A. 953. And the rule can only mean that there must be an ascertainably clear legal right and duty."

In cases involving the decisions of licensing or other admitting boards, review has been granted in this State, where the questions turned upon statutory construction. In *Stark v. Board of Registration,* 179 Md. 276, 19 A. 2d 716, 720, it was said: "If a method is pursued contrary to a statute, or standards of qualification set up not authorized or prescribed by it, mandamus will lie to compel the observance of the law according to its language, meaning, and intent. Or, it may be issued to compel a hearing or to come to a decision. *Miles v. Stevenson,* 80 Md. 358, 364, 30 A. 646; *Manger v. Board of State Medical Examiners,* 90 Md. 659, 45 A. 891; *Maryland State Funeral Directors Ass'n v. State Board of Undertakers,* 150 Md. 294, 133 A. 62; *Weer v. Page,* 155 Md. 86, 141 A. 518."

In that case it was held, however, that Stark had not exhausted his statutory remedy of appeal. In *Funeral Directors v. State Board,* supra, this Court said: "If it appears that the board did, by misconstruing the statute, measure the applicant's qualifications by a standard other than that given in the statute, the writ of mandamus may issue to require an investigation and decision according to the statutory standard." See also *University of Maryland v. Murray,* 169 Md. 478, 182 A. 590, 103 A. L. R. 706; *Jones v. House of Reformation,* 176 Md. 43, 3 A. 2d 728.

The case of *Hopper v. Jones,* 178 Md. 429, 13 A. 2d 621, is somewhat in point, although the question of a right to review on mandamus was assumed and not discussed. That case involved a question whether the rule of layoff according to seniority, under the State Merit System, was applicable where the Legislature eliminated one salary item in the budget, and was dealt with as a question of law properly reviewable. And in the case of *Duncan v. Graham,* supra, this Court passed upon the legality of proposed payments under the same ordinance (No. 553) involved in the case at bar, under a bill for injunction.

Questions involving the interpretation of pension statutes or ordinances have been held reviewable in other states, either by certiorari or mandamus, where no direct appeal is provided. See *In re Gifford,* 192 Wash. 562, 74 P. 2d 475, 114 A. L. R. 348; *State ex rel. Little v. Carter,* 111 Ohio St. 526, 146 N. E. 56; *Peters v. Sacramento Retirement System,* 27 Cal. App. 2d 10, 80 P. 2d 179.

Many other cases might be cited for the proposition that mandamus will lie where an administrative agency, in the exercise of its discretion, exceeds the restrictions imposed upon it by statute. See notes 27 Minn. L .R. 399; 25 Ia. L. R. 638. See also the excellent analysis of the problem by Patterson, "Ministerial and Discretionary Official Acts," 20 Mich. L. R. 848, in which the author maintains that the classification as between ministerial and discretionary acts is meaningless, and should be discarded in favor of an inquiry into the scope of discretionary power conferred.

In the last analysis, the question as to what decisions of an administrative agency are reviewable must turn upon the statute creating it, and upon the type and degree of discretion conferred upon the particular agency. Courts have the inherent power, through the writ of mandamus, by injunction, or otherwise, to correct abuses of discretion and arbitrary, illegal, capricious or unreasonable acts; but in exercising that power care must be taken not to interfere with the legislative prerogative, or

with the exercise of sound administrative discretion, where discretion is clearly conferred.

Coming then to the merits of the case at bar, it is perfectly clear that under the provisions of Ordinance No. 942 (as distinct from its title) the benefits of Section 6 (11) (a) are not extended to all members of the Retirement System, nor to all employees of the city as defined in Section 1 (2), but only to such members as fit the description of holding a regular permanent position of the city. The court below excluded from evidence proffered verbal testimony as to the intention of the Mayor and City Council, but admitted certain testimony as to the circumstances surrounding or existing at the time of the passage of the ordinance. We find no error in these rulings. Since the case was heard by the court below without a jury, the entire record is open to review. *Schriver v. Cumberland*, 169 Md. 286, 181 A. 443.

The provisions of Section 6 (11) (a) are quite unusual. As applied to a civil service employee of the city, who is removable only for cause, it would seem that the only case, to which the subsection could apply, would be the case where a position is abolished, for reasons of economy or otherwise, and the evidence shows that the occasion for the passage of Ordinance 942 was a general retrenchment policy of the city in the year of its passage. Only in the event of layoff would such an employee be entitled to benefits under the age of sixty years, and in an amount equivalent to what he would receive if permanently incapacitated. For the purpose of this subsection, retirement by reduction of personnel is put in the same category as permanent incapacity, provided the person retired has had at least twenty years service, but provision is made for adjustment if the person laid off is reinstated. The risk of layoff is hardly one that could be evaluated on an actuarial basis, and that is probably the reason why the ordinance, as introduced, was amended to make these payments contingent upon appropriations by the city. We are not advised whether any funds are avail-

able; if not, then the issuance of a writ would be wholly nugatory. The record discloses that the additional cost is not made up by increase in the rate of members' contributions, or out of the reserve, but by specific appropriations by the city, and the continuance of payments is wholly optional. Whether such a provision is within the scope of the enabling Act need not be considered, because we think that in any event the subsection does not apply to the appellant in this case.

We think the appellant cannot fairly be held to have been removed from a regular permanent position, merely because he failed of reappointment. The tenure of a public officer appointed for a fixed term is not permanent, although the office may be, nor is he removed when his term of office expires. 2 *McQuillin, Municipal Corporations* (2d Ed.), p. 419, Sec. 574; *Cole v. Marshall,* 6 N. J. Misc. 702, 142 A. 563. On the other hand, where an office or position is legally abolished, and the incumbent is not retained or transferred, it is generally held that this constitutes a removal. Compare *Clossey v. Civil Service Commission,* 9 N. J. Misc. 1297, 157 A. 253. And see cases collected in 2 *McQuillin, Municipal Corporations,* Sec. 574, Note 44.

There is a recognized distinction between public officers and mere employees. Compare *Buchholtz v. Hill,* 178 Md. 280, 13 A. 2d 348, and *Jackson v. Cosby,* 179 Md. 671, 22 A. 2d 453. The Retirement System was adopted primarily for the benefit of the latter class, and to prevent the retention of superannuated or incapacitated employees upon the public payrolls. It is true that the original ordinance permitted officers to become members, but we do not believe the additional protection, conferred by Section 6 (11) (a), against layoff through reduction in personnel, was intended to apply to retirement through expiration of the term of office, and the appointment of a successor. That is a hazard that is inherent in public office.

Nor do we find that there is any occasion for the application of the doctrines of waiver or estoppel, as con-

tended, on the ground the Board admitted the appellant to membership. In return for his contributions, he received protection during his tenure of office, and is now entitled to a return of all his contributions with compound interest. Whether he is entitled to the special benefits of the section, under which he claims, is the sole question here, and if he misconstrued the effect of the provision, he cannot now rely upon that as a representation by the Board. Nor had the Board any authority to extend the benefits of the subsection to persons ineligible thereto. *Schriver v. Cumberland,* supra.

For the reasons stated, the order of the lower court in dismissing the petition for mandamus must be affirmed.

*Order affirmed, with costs to appellee.*